UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBERT C. DALTON,<br><br>                 Plaintiff,<br><br>vs.<br><br>SAINT BARNABAS MEDICAL CENTER, *et al.*,<br><br>                 Defendants. | Civil Action No. 21-cv-05354-JXN-SDA<br><br><br>OPINION<br><br>September 30, 2025 |

**STACEY D. ADAMS**, United States Magistrate Judge

THIS MATTER comes before the Court on the motion of *pro se* Plaintiff Robert C. Dalton ("Plaintiff") for Leave to File a Third Amended Complaint ("TAC"). (ECF No. 130). Defendants Rutgers University ("Rutgers"), Jonathan S. Holloway, Brian L. Strom, Bill Troy, and John Jay Hoffman (collectively, the "Rutgers Defendants") oppose the motion at ECF No. 131. Defendants Hackensack Meridian Health ("HMH"), HMH JFK University Medical Center, Robert C. Garrett, Amie Thornton, Dr. Jamie M. Levine, and Thomas Flynn (collectively, the "HMH Defendants") oppose the motion at ECF No. 132. Defendants RWJBarnabas Health ("RWJ"), Saint Barnabas Medical Center ("Barnabas Medical Center"), Andy Anderson, Barry H. Ostrowsky, and Mark E. Manigan (collectively, the "RWJBH Defendants") oppose at ECF No. 133. Defendant State of New Jersey ("NJ") notified the Court it did not oppose the motion at ECF No. 134.[1] The Court

---

[1] There are eight additional defendants named in the caption of the proposed TAC: Kimberly Pastva, Rachael Honig, Cassy Wood, Adrienne Simonds, Anthony Cuzzola, New Jersey Department of Human Services, Hackensack Meridian JFK Johnson Rehabilitation Institute, and Hackensack Meridian Neuroscience Institute at JFK University Medical Center. (ECF No. 130-3). As these defendants have not been served, they did not respond to Plaintiff's motion. The Court

decides this motion without oral argument pursuant to Fed. R. Civ. P. 78. After considering the submissions of the parties, and for the reasons stated below, Plaintiff's motion for leave to file a TAC is **DENIED without prejudice**.

## BACKGROUND

Plaintiff filed his original complaint in this matter on March 15, 2021. (ECF No. 1). Before anyone was served, Plaintiff filed a First Amended Complaint on July 15, 2021. (ECF No. 5). The only named defendants in the First Amended Complaint were Barnabas Medical Center, RWJ, Nicole Centrella and Lauren Curato. Defendants Centrella, Barnabas Medical Center, and RWJ filed a motion to dismiss the First Amended Complaint on August 12, 2021. (ECF No. 16). Defendant Curato filed a motion to dismiss the First Amended Complaint on September 25, 2021. (ECF No. 19).

The Honorable Julien Xavier Neals, U.S.D.J., issued an Order and Opinion on the motions on November 6, 2023. (ECF Nos. 34-35). He dismissed the First Amended Complaint against Curato and Centrella in its entirety with prejudice. (*Id.*). With regard to Barnabas Medical Center and RWJ (together, the "Barnabas Defendants"), Judge Neals dismissed with prejudice Plaintiff's claims under Titles II and III of the Americans with Disabilities Act ("ADA") and under the Fifth and Fourteenth Amendments to the United States Constitution. (*Id.*). However, he denied the motion with respect to Plaintiff's claims under Section 504 of the Rehabilitation Act. (*Id.*). Thus, the only claim that remained after the motion to dismiss was decided was Plaintiff's Section 504 claim against the Barnabas Defendants. (*Id.*). Judge Neals afforded Plaintiff a limited opportunity to amend the complaint, solely "to plead claims raised for the first time in Plaintiff's oppositions

notes that there are no allegations in the proposed TAC that explain why these individuals are named or what wrongful conduct they engaged in towards Plaintiff. Accordingly, there is no basis for adding them to the TAC.

(ECF No. 24, 29)" by December 6, 2023. (ECF No. 35). The Court specifically identified Plaintiff's newly raised claims as: (i) a consent order that was allegedly violated by the Barnabas Defendants and Curato; (ii) an alleged violation of 42 U.S.C. § 12203 by the Barnabas Defendants and Curato; (iii) claims against the Barnabas Defendants and Curato under 42 U.S.C. §§ 1983, 1985, 1986 and N.J.S.A. 30:4-27. (ECF No. 34 at 6).

Plaintiff filed his Second Amended Complaint ("SAC") on January 3, 2024. (ECF No. 46).[2] He added 14 defendants in the SAC. (*Id.*). Before any of the defendants had a chance to respond, on April 15, 2024, Plaintiff filed a Third Amended Complaint ("TAC") (ECF No. 81) which was struck on April 25, 2024 because Plaintiff failed to request leave in violation of Fed. R. Civ. P. 15. (ECF No. 86). Plaintiff then filed the instant motion on July 8, 2024 seeking leave to file a TAC. (ECF No. 108). The motion was administratively terminated without prejudice and a new briefing schedule was entered. (ECF No. 113). The motion was fully briefed and filed on January 6, 2025. (ECF Nos. 130-134). Plaintiff failed to timely submit a reply.[3]

---

[2] Plaintiff also filed an "Amended Second Amended Complaint" (ECF No. 81), that was struck by the Court as violating Fed. R. Civ. P. 15 because it was filed without leave.

[3] Plaintiff submitted a 21-page letter entitled "Notice of Criminal Complaints" on January 6, 2025. (ECF No. 135). The Court could not decipher what relief Plaintiff sought in the letter. It appeared Plaintiff was seeking an indefinite stay of his deadline to reply while he pursued criminal complaints against the Defendants (none of which, to this Court's knowledge, have materialized since that time). Indeed, in the relief sought section of the letter, Plaintiff admitted "I cannot ask the Court for specific relief sought at this time, except for an adjournment of time until I provide the court with the document requesting relief after I file the criminal complaint...." (*Id.*). To the extent the letter was a request by Plaintiff for an extension of time to submit his reply, the Court denied the request, emphasizing that Plaintiff had been attempting to amend his complaint since April 15, 2024; that a briefing schedule had been set on July 16, 2024, which required Plaintiff to serve his reply by September 16, 2024 (ECF No. 113); and that those deadlines were thrice extended to October 15, 2024 (ECF No. 117), November 6, 2024 (ECF No. 121), and January 2, 2025 (ECF No. 128). (ECF No. 137). The Court further noted that its final extension Order explicitly stated "no further extensions will be granted absent exigent circumstances" and that the request was not made until 4 days after the extended filing deadline had passed. (*Id.*).

## LEGAL DISCUSSION AND ANALYSIS

Motions to amend filed prior to the entry of a pretrial scheduling order are governed by Fed. R. Civ. P. 15, which requires the court to "freely give leave when justice so requires." The Third Circuit has adopted a "liberal" approach to amendments of pleadings. *DLJ Mortg. Cap., Inc. v. Sheridan*, 975 F.3d 358, 369 (3d. Cir. 2020). A court may deny a motion to amend only where there is (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; (4) repeated failures to cure deficiencies; or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 1984). These factors "are not exhaustive, allowing a court to ground its decision, within reason, on consideration of additional equities, such as judicial economy/burden on the court and the prejudice denying leave to amend would cause to the plaintiff." *Mullin v. Balicki*, 875 F. 3d 140, 149-50 (3d Cir. 2017). However, the most important factor is prejudice to the non-moving party. *Id.* Applying these factors to the instant matter, the Court finds that Plaintiff's motion to file a TAC should be denied for three principle reasons: (i) it is impossible to decipher; (ii) it goes beyond the scope of Judge Neals' November 6, 2023 Order; and (iii) it is futile. Each of these reasons will be addressed in turn below.

### 1.   **Procedural Deficiencies**

As an initial matter, the Court notes several procedural deficiencies with Plaintiff's filing. Plaintiff failed to provide a red-line, as required by Local Civil R. 15.1(a)(2), or otherwise articulate the changes between his SAC and his proposed TAC. While this Court affords deference to *pro se* litigants, the expansion of the 39-page SAC to the 145-page proposed TAC, unaccompanied by a red-line or even a summarization of the changes, is unduly burdensome on the Court. Further, the proposed TAC is nearly impossible to understand, contains five different "claim sets" without any separately pled counts and does not clearly state what claims apply to

4

what defendants. (ECF No. 130-3). Plaintiff does not provide a brief addressing the *Foman* factors or otherwise explain the basis for seeking leave. (ECF No. 130). Instead, he provides a 17-page narrative as part of his Notice of Motion, which begins with a "Statement of Protest." These technical deficiencies, alone, warrant denying Plaintiff's motion. Nevertheless, the Court will address the application on its merits.

### 2. Plaintiff's Proposed Amended Complaint is Confusing, Impossible to Decipher and Does Not Cleary and Succinctly State His Claims

Plaintiff's proposed TAC is a behemoth 145-page, rambling stream of conscious document. (ECF No. 130-3). The Court cannot ascertain what claims are being asserted against which defendants. It includes five "Claim Sets," A, B, C, D, and G (there is no Claim Set E or F) and adds eight new defendants, on top of the fourteen already added to the SAC. (*Id.*).

Plaintiff's proposed TAC fails to comply with F.R.C.P. 8 because it is an impermissible group pleading. Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotation marks and citations omitted). The Court recognizes that because Plaintiff is *pro se* "the Court has a special obligation to construe the complaint liberally." *Wright v. Castle Point Mortg.*, No. 05-CV-4851 (DMC), 2006 WL 1468678, at *2 (D.N.J. May 24, 2006) (citing *United States v. Miller,* 197 F.3d 644, 648 (3d Cir. 1999)). Nonetheless, the Court should not permit the filing of the TAC "if the *pro se* complaint is so confusing or unintelligible that no party could possibly understand or reply to it." *Cole v. Commonwealth Federal,* No. 94-6099, 1994 WL 618464, *1 (E.D.Pa. 1994) (first citing *King v. Fayette County,* 92 F.R.D. 457, 458 (W.D.Pa. 1981) (finding a *pro se* plaintiff's complaint legally defective under Rule 8(a) because no party could possibly understand and reply to them); then citing *Brown v. Califano,* 75 F.R.D. 497, 499

(D.D.C. 1977) (dismissing a pro se plaintiff's complaint because it was "a confused and rambling narrative of charges and conclusions concerning numerous persons, organizations and agencies")). After hours of review, the Court is unable to comprehend what Plaintiff is saying, what claims he is asserting or the nature of each defendant's involvement. It is not the Court's burden to unravel Plaintiff's claim. He must make his complaint clear, succinct and reasonably comprehendible.

Additionally, Plaintiff cannot "provide only conclusory allegations against Defendants as a group, failing to allege the personal involvement of any Defendant." *Galicki v. New Jersey*, No. 14-CV-169 (JLL), 2015 WL 3970297, at *2 (D.N.J. June 29, 2015). Reading Plaintiff's TAC, it is nearly impossible for the Court to glean which claims are alleged against which defendants. "Alleging that 'Defendants' undertook certain illegal acts—without more—injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom when. Such speculation is anathema to contemporary pleading standards." *Japhet v. Francis E. Parker Mem'l Home, Inc*., No. 14-CV-01206 (SRC), 2014 WL 3809173, at *2 (D.N.J. July 31, 2014).

Every claim in the TAC is alleged against multiple defendants, with little to no distinction as to what wrongful conduct was allegedly engaged in by each individual defendant. While "[i]t may at times be appropriate and convenient for a pleading to use the short-hand term 'Defendants,'" when the Complaint named numerous defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct, Plaintiffs cannot merely state that *'Defendants* did *x'*–they must specifically allege *which* Defendants engaged in what wrongful conduct." *Falat v. Cnty. of Hunterdon*, No. 12-CV-6804 (SRC), 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (emphasis in original). The TAC frequently groups the Defendants together and merely alleges that, collectively, Defendants acted improperly. For example, Claim Set B is

asserted against at least twenty defendants, and beyond identifying Dr. Levine and the location where Plaintiff's appointments occurred, the allegations are vague and do not explain each defendants' involvement:

- *All said Defendants* in this Claim Set B violated the Plaintiff's rights under the N.J. Administrative Code 8:42G-41(a)(31). because "concussion clinic" did not allow Dr. Levine to follow the TBI-disabled Plaintiff's civil right under N.J.A.C. §8:43G-4.1(a)(31) (TAC at 70) [4] (emphasis added).

- Regardless, *all said Defendants* in the Claim Set B did not care about the TBI-disabled Plaintiff's preferred method of effective communication and continued to unlawfully discriminate against the TBI-Disabled Plaintiff on the basis of disability regarding accessibility by denying the Plaintiff's preferred method of effective communication by using an auxiliary service, an email, for all communications, too. (TAC at 71) (emphasis added).

- I never received the written explanation from said *Defendants of Claim set B* as to why I could not use by aid as required by Law, 28 CFR §35.164. Therefore, *said Defendants* acted with deliberate indifference. (TAC at 72) (emphasis added)

(Typographical errors in original).

This pattern of impermissible group pleading continues throughout the TAC. Claim Set A contains "claims" 1 through 8 which are alleged against Defendants Barnabas Medical Center, RWJ, Mark Manigan, and Barry Ostrowsky. (TAC pg. 52-68). There are no individual allegations against Defendants Manigan or Ostrowsky, and every claim in Claim Set A generally states "Defendants" violated either the NJCRA, § 1983, or the Rehabilitation Act of 1973, without any indication as to the specific conduct of each individual defendant that was wrongful under each referenced law.

---

[4] The Court refers to page numbers instead of specific paragraphs when citing to the TAC, because the paragraph numbers are out of order and duplicative.

Further, there are no individualized allegations against the five new individual defendants in the TAC, Kimberly M. Pastva, Racheal Honig, Cassy Wood, Adrienne Simonds, nor Anthony Cuzzola. Defendant Cuzzola is not even mentioned anywhere in the TAC beyond the caption. (TAC at 1). There is nothing that indicates how Defendants Pastva, Honig, Wood, or Simonds were involved or that otherwise identifies any wrongful act taken by them, other than blanket statements that they are a part of the leadership of the corporate defendants. (TAC at 47-48).

Simply put, the proposed TAC fails to comply with basic pleading standards. It does not provide defendants with enough information to ascertain what claims are being asserted against them and allow them to meaningfully respond. Plaintiff's TAC leaves it to the Court to speculate as to which defendants are associated with which factual assertions and which assertions in the 145-page TAC are intended to support any given legal claim. "It is not the Court's job to laboriously search the Complaint for factual assertions that could, in theory, be used to support one legal claim or another". *Falat v. Cnty. of Hunterdon*, No. 12-CV-6804 (SRC), 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013). It would be an impossible task for this Court to sift through Plaintiff's impermissibly vague and conclusory group pleadings to determine which are viable and which are not. The Court will not accept a pleading prepared in this fashion and, therefore, will not grant leave for Plaintiff to file the TAC in its current form.

### 3. Plaintiff's Proposed Amended Complaint Goes Beyond the Scope of Judge Neals' Opinion

Judge Neals' November 6, 2023 Order made it clear that Plaintiff was permitted to amend his complaint solely to add the claims raised in his Opposition to the motion to dismiss against the Defendants included in Plaintiff's amended complaint. (ECF Nos. 34-35). His Opinion clearly delineated what those three claims were: (i) a consent order that was allegedly violated by the Barnabas Defendants and Curato; (ii) an alleged violation of 42 U.S.C. § 12203 by the Barnabas

Defendants and Curato; and (iii) claims under 42 U.S.C. §§ 1983, 1985, 1986 and N.J.S.A. 30:4-27. (*Id.*). Judge Neals did not give Plaintiff free reign to add brand new claims or parties, attempt to revive his dismissed claims, wholly amend the complaint, or otherwise take a second bite at the apple. Instead, the Opinion clearly stated "the Court permits Plaintiff to file a second amended complaint, as to those claims not pled in the Amended Complaint but raised in the oppositions (ECF Nos. 24, 29) *only*." (ECF No. 34 at 17) (emphasis added). He did not authorize the addition of new parties or the filing of any pleadings beyond the SAC.

Defendants argue that Plaintiff's proposed TAC should not be permitted because it goes well beyond what was contemplated by Judge Neals' Opinion and Order. *See Glazewski v. Corzine*, No. 06-CV-4107, 2008 WL 2875331, at *2 (D.N.J. July 22, 2008) (barring a plaintiff's attempt to add new parties and claims in light of the District Judge's prior decision that stated "leave to file an amended complaint addressing the deficiencies in [plaintiff's] Complaint was not a license to add new claims. . . unrelated to the claims asserted in the Complaint"). Defendants are indeed correct that the proposed TAC exceeds the scope of Judge Neals' Order. First, Plaintiff adds eight new *parties*, in addition to the fourteen new parties in the SAC, including Hackensack Meridian JFK Johnson Rehabilitation Institute, Kimberly M. Pastva, Racheal Honig, Cassy Wood, Adrienne Simonds, Anthony Cuzzola, New Jersey Department of Human Services, and Hackensack Meridian Neuroscience Institute at JFK University Medical Center. (ECF No. 35). Second, as best it can be understood, Plaintiff adds entirely new claims including the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 (NJCRA); N.J.A.C. 8:43G–4.1; 18 U.S.C. § 1035; N.J.S.A. 2C:13-3; and N.J.S.A. § 26:2H-12.8(2). Third, Plaintiff attempts to revive claims previously dismissed by Judge Neals, such as his Rehabilitation Act against individual defendants and his Title II claim. Fourth, Judge Neals only authorized the filing of the SAC, not a TAC.

The Court agrees. Plaintiff was afforded a limited opportunity to amend his complaint. He was not given an unlimited invitation to enlarge his lawsuit to add new parties and claims. In short, Plaintiff's proposed TAC goes beyond the scope of Judge Neals' Order. Plaintiff cannot use a complaint amendment as a means "to salvage claims which [he] now perceives to be legally defective." *Berk v. Ritz Carlton Condo. Assoc.*, 19-CV-20666 (NLH) (MJS), 2021 WL 5277459, at *4 (D.N.J. Nov. 12, 2021). Plaintiff's proposed TAC is barred for this reason as well.

### 4.    <u>Plaintiff's Proposed Third Amended Complaint is Futile</u>

Notwithstanding the limitations in Judge Neals' Order, there is an argument to be made that Plaintiff still has the right under Fed. R. Civ. P. 15 to seek leave to amend his complaint at any time, provided he does not try to resuscitate any claims or defendants that were already dismissed from this matter with prejudice and that he otherwise meets the five factors set forth in *Foman*, 371 U.S. at 182. Indeed, the Rules state that such leave should be freely given when justice requires. *See* Fed. R. Civ. P. 15(a)(2). The Court is also mindful that there has not even been an initial pretrial scheduling conference in this matter, so Plaintiff seeks to amend before discovery has gotten underway, minimizing any prejudice. Accordingly, in the interest of completeness, the Court also analyzes whether the proposed TAC should be permitted under Fed. R. Civ. P. 15, applying the five *Foman* factors.

### i.    ***Undue Delay***

The Court first addresses undue delay. Although a substantial amount of time has passed since Judge Neals' issued his decision on the motion to dismiss, there has been no undue delay by Plaintiff. "The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unfair burden on the opposing party." *Adams v. Gould, Inc.*, 739 F. 2d 858, 868 (3d. Cir. 1984) (citations omitted); *see*

*also Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001). Undue delay is one "that is protracted and unjustified," and "can indicate a lack of diligence sufficient to justify a discretionary denial of leave." *Mullin*, 875 F.3d at 151. Although there were multiple extensions, largely due to Plaintiff's disabilities, they were always timely requested and granted by the Court. Other than his failure to timely file a reply (which is an optional brief), Plaintiff has not blown any significant deadlines. Therefore, the Court does not find undue delay.

### ii.    *Bad Faith or Dilatory Motive*

The second factor, bad faith or dilatory motive, is not argued by any Defendant except the Rutgers Defendants. They argue that the claims against the Rutgers Defendants were brought in bad faith to revive Plaintiff's dismissed claims by adding a state actor. (ECF No. 131 at 21). They assert that Plaintiff has not alleged any plausible came against the Rutgers Defendants, so the addition of them to the Third Amended Complaint is nothing more than an attempt to circumvent the prior dismissal of those of Plaintiff's claims that require a state actor. This argument is more properly raised in the futility section, as it hinges upon whether or not Plaintiff has sufficiently pled any plausible claims against the Rutgers Defendants.

Bad faith focuses on the motives of the moving party for not amending a pleading sooner. *Zelma v. Choice Energy, LLC*, No. 19-CV-17535 (CCC)(MF), 2020 WL 5201341, at *2 (D.N.J. Sept. 1, 2020). "Simply failing to add a claim a party had prior knowledge of does not, alone, amount to bad faith." *Diallo v. Alo Enters. Corp.*, No. 12-CV-3762 (AET), 2013 WL 3772827, at *3 (D.N.J. July 17, 2013) (citing *Leased Optical Depts. v. Opti–Ctr., Inc.*, 120 F.R.D. 476 (D.N.J. 1988)).

Here, there is some merit to the Rutgers Defendants' bad faith argument. Plaintiff candidly admits that he named the Rutgers Defendants solely because Rutgers is a "vassal" of RWJ, which

renders it a state actor. (TAC at 46) (emphasis added). He then uses this as a basis for reviving his previously dismissed claims. (*Id.*). This sort of tactical amendment, aimed at circumventing the Court's prior ruling, is tantamount to bad faith. *See e.g. Berk*, 2021 WL 5277459, at *4 (an amendment cannot be used "to salvage claims that the [moving party] now perceives to be legally deficient"); *Reliford v. City of Tampa Hous. Auth.*, 190 F. App'x 928, 928 (11th Cir. 2006) (finding bad faith when the proposed amendment complaint was "a transparent attempt to get around the. . . problem raised by the motion to dismiss"). This factor thus weighs against allowing the TAC, at least insofar as it pertains to the Rutgers Defendants.

### iii.    *Undue Prejudice*

The third *Foman* factor is undue prejudice, which requires the Court to assess whether the amendment will create an undue hardship on the non-moving party. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d. Cir. 1993) ("[P]rejudice to the non-moving party is the touchstone for the denial of an amendment") (quoting *Cornell & Co. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)); *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) (in deciding a motion for leave to amend, the court should "focus on the hardship to the [non-moving party] if the amendment were permitted") (citing *Adams v. Gould, Inc.*, 739 F. 2d 858, 868 (3d Cir. 1984)). In evaluating prejudice, the court should consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273; *see also Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d. 587, 614 (D.N.J. 2010) ("Prejudice may involve requiring the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delaying the resolution of the dispute."); *Joy v. Perez*, No. 10-CV-01636 (DMC)(JAD), 2011 WL 221700 at *2 (D.N.J. Jan. 21, 2011)

("Unfair prejudice is usually found when there has been a significant unjustified delay in moving to amend that creates an unfair disadvantage for the defendant.").

Here, discovery has not yet even commenced. Therefore, there is no prejudice in terms of prolonging the discovery process or elongating the trajectory of this case. Despite this, the Rutgers Defendants argue that they will be unduly prejudiced if the TAC is permitted to proceed given the extreme passage of time between the alleged incidents (which occurred from 2019-2021) and the addition of them to the case in 2025. (ECF 131 at 23). The Rutgers Defendants argue that it is improper to add new defendants when the litigation has already been pending for a significant period of time. (*Id.* at 23-24). Plaintiff does not explain why he waited so long to add the Rutgers Defendants nor does he address whether these parties could have been identified sooner if Plaintiff exercised a modicum of diligence. Still, despite the filing of the original complaint in 2021, not much has transpired in the case to date as a result of motion practice and multiple extensions. While the Court appreciates that there may be some difficulty locating witnesses or documents due to the passage of time, the Rutgers Defendants' concerns speak in generalities and do not cite to anything specific. Therefore, the Court does not find, based on the record before it, that the TAC would pose an undue prejudice to defendants.

## IV.    *Repeated Failure to Cure Deficiencies*

The fourth factor requires the Court to assess whether there have been repeated failures by Plaintiff to cure deficiencies. This factor weighs against amendment where the plaintiff has tried unsuccessfully multiple times to cure deficiencies in his pleading. *See Cal. Pub. Emps' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 165 (3d. Cir. 2004) (affirming district court's denial of leave to amend where plaintiff, for the second time, failed to remedy the pleading deficiencies in their complaint despite "clear guidance" given by the district court); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d

262, 383 (D.N.J. 2007) (denying leave to amend where plaintiffs "had three full opportunities to state a claim and failed to do so, in spite of . . . [the court] providing [p]laintiffs with a detailed roadmap in its previous opinion").

Here, there have not been multiple failures by Plaintiff to cure any deficiencies in his original pleading. Plaintiff filed his First Amended Complaint before Defendants were even served. (ECF No. 5). He filed the SAC after Judge Neals specifically granted Plaintiff leave to file an amended pleading (ECF No. 35). He seeks to file the TAC before any of the Defendants have substantively responded to the SAC and before the Court has issued any rulings on the claims contained in the SAC. Thus, there have not been repeated attempts by Plaintiff to cure his deficiencies. He has made two attempts since Judge Neals' Order, one of which was authorized and the second which he attempts to do via this motion. Given his *pro se* status, the Court does not find this to rise to the level of what is contemplated by the fourth *Foman* factor.

### IV. Futility

The strongest argument advanced by defendants for denying the amendment is the fifth factor, futility. Namely, defendants argue that the amendment should be denied because the claims would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The standard for assessing futility is the same standard of legal sufficiency that applies under Fed. R. Civ. P. 12(b)(6). *Reardon v. New Jersey*, No. 13-CV-5363 (NLH), 2014 WL 2921030, at *6 (D.N.J. June 27, 2014) (citation and quotation omitted). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d. Cir. 2000). Rule 15 futility requires that the "newly asserted defense appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit." *Leach v. Applicant Insight, Inc.*, No. 20-CV-1533 (JMV), 2021 WL 236492, at *1 (D.N.J. Jan. 25, 2021) (quoting

14

*Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990)).

To survive dismissal, the complaint must be sufficient to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To satisfy the plausibility standard, the pleading must "show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation and citation omitted). Even if plausibly pled, a complaint will not withstand a motion to dismiss if it fails to state a "legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-CV-7148 (JLL)(JAD), 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

Here, Plaintiff's proposed TAC fails to plead its claims with sufficient plausibility and fails to state legally cognizable claims. Therefore, the proposed TAC is futile. Given how difficult it is to follow the TAC, or decipher the claims being asserted and the defendants against whom they are alleged, the Court will address in summary fashion why the TAC is futile. These claims are legally insufficient and should not be included in any amended complaint that Plaintiff may seek to file in the future.

### 1.    Plaintiff's Claims are Time-Barred

Most of Plaintiff's claims are governed by a one or two year statute of limitations and are therefore time-barred. *See e.g. Cottrell v. Zagami, LLC*, No. 08-CV-3340 (JEI), 2012 WL 479972, at *3 (D.N.J. Feb. 14, 2012), *aff'd*, 537 F. App'x 46 (3d Cir. 2013) (recognizing that the statute of limitations for the ADA is two years); *Club 35, LLC v. Borough of Sayreville*, No. 12-CV-2953 MAS, 2013 WL 1750037, at *2 (D.N.J. Apr. 23, 2013) (holding that the statute of limitations for Section 1983 and 1985 claims are two years); *Hilton v. Whitman*, No. 04-CV-6420 (SDW), 2008

WL 5272190, at *12 (D.N.J. Dec. 16, 2008) ("the statute of limitations for a § 1986 claim is one year"); *Rayfield v. City of Paterson*, No. 17-CV-5144 (ES)(SCM), 2019 WL 2959899, at *4 (D.N.J. July 9, 2019) (recognizing the statute of limitations for NJCRA claims is two years from accrual); *Campfield v. New Jersey Transit*, No. 19-CV-19794, 2023 WL 6387271, at *4 (D.N.J. Sept. 29, 2023) (applying a two year statute of limitations to a Rehabilitation Act claim).

The allegations in Plaintiff's original amended complaint stem from treatment he received on March 21, 2019 at St. Barnabas and the incidents that followed his car accident on March 15, 2019. (ECF No. 5). Plaintiff's TAC contains new allegations stemming from: an incident on June 6, 2019 at JFK Johnson Rehabilitation Institute; an incident on November 14, 2019 at JFK University Medical Center; issues getting access to telehealth appointments from September to December 2020; an issue using MyChart in 2020 and 2021; and various other incidents throughout 2020 and 2021. (ECF 130-3 at 69, 83, 84, 107). For Plaintiff's new allegations to be timely, they would have to have occurred within one or two years prior to the filing date of Plaintiff's TAC. Plaintiff's new claims stem from incidents from 2019 to 2021. Plaintiff filed the instant motion on July 8, 2024, well beyond the applicable limitations' period.

Plaintiff cannot avoid the application of the statute of limitations on the grounds that the claims in the TAC "relate back" to the original claims.  Rule 15(c)(1) provides that an amendment relates back to the date of the original pleading if:

> (A)  the law that provides the applicable statute of limitations allows relation back;
>
> (B)  the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C)  the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the

summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

All three conditions set forth in Rule 15(c) must be satisfied for Plaintiff's new claims to relate back. *Israel v. Smith*, No. 13-CV-97 (JAP)(LHG), 2014 WL 12915232, at *6 (D.N.J. Oct. 7, 2014).

Applying this standard, Plaintiff fails to demonstrate that the claims in the TAC relate back to his original complaint. By Plaintiff's own admission, the proposed TAC "involves new claims against new Defendants." (ECF 130-3 at 1). Plaintiff's First Amended Complaint concerned a single incident on March 15, 2019 and was asserted against four parties. (ECF No. 5). The proposed TAC adds 22 new parties, asserts more than 100 pages of new facts, involves issues from different dates and time frames, and concerns different treatment issues. (ECF No. 130-3, *passim*). Plaintiff's new claims in the TAC have nothing to do with the incidents surrounding Plaintiff's March 2019 car accident that are described First Amended Complaint. (*Compare* ECF No. 5 *with* ECF No. 130-3). Plaintiff's new claims vary between subsequent unrelated medical issues and appointments throughout 2019, 2020, and 2021 that are in no way connected to the allegations in Plaintiff's initial pleading. An amended complaint "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those in the original pleading set forth." *Pintor v. Port Auth. of New York & New Jersey,* No. 08-CV-2138 (SDW), 2009 WL 2595664, at *2 (D.N.J. Aug. 20, 2009) (quoting *Mayle v. Felix,* 545 U.S. 644, 650 (2005)).

Moreover, Plaintiff's addition of 22 new defendants does not relate back to the original complaint. Plaintiff did not identify any fictitious defendants in his First Amended Complaint.

(ECF. No. 5). The newly-added defendants did not receive notice of Plaintiff's claims prior to 2025. These defendants did not know, nor should they have known, that this action would have been brought against them, but for a mistake concerning their identity. These are entirely new individuals and entities from those included in original pleading, and this provides yet another reason why the claims in the TAC do not relate back as required by Fed. R. Civ. P. 15(c)(1)(C).

Accordingly, Plaintiff's claims are time barred and they fail to satisfy Rule 15(c)(1)(B) because they are do not arise out of the same "conduct, transaction, or occurrence" as his original pleading. To allow Plaintiff to assert these claims in the TAC would therefore be futile.

**2.    Plaintiff's Title II ADA Claims and Rehabilitation Act Claims Cannot Be Maintained Against Non-Government Entities or Defendants That Did Not Receive Federal Funds**

Only public entities may be liable for violations of Title II of the ADA. *Doe v. Div. of Youth & Fam. Servs.*, 148 F. Supp. 2d 462, 489 (D.N.J. 2001). A "public entity" as defined by the statute is "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. § 12131(1). Similarly, a claim under the Rehabilitation Act can only be maintained against a defendant who received federal funds. *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 280 (3d Cir. 2012) (citing 28 U.S.C. § 794(a)). None of the named defendants, with the exception of the newly-added Rutgers, State of NJ and NJ Department of Human Services, are government agencies and, accordingly, they cannot be held liable under Title II. *See e.g. Matthews v. Pa. Dep't. of Corr.*, 613 F. App'x. 163, 169-70 (3d Cir. 2015) (affirming the dismissal of Title II and ADA claims against defendants because they were not public entities). Likewise, absent a cognizable claim of federal funding, the Rehabilitation Act claims cannot be maintained against any of the newly-added defendants.

Plaintiff summarily asserts in the proposed TAC that all defendants received funds from the federal government. (TAC at 13). Plaintiff sets forth three bases for this assertion. First, he claims that "all Defendants including corporate entities and individuals receive federal funds through Medicare and Medicaid." (*Id.*). Second, he asserts that "[s]ome private corporate entities and state entities receive federal funding for research." (*Id.*). Third, he claims that several of the hospital and medical entities are a "part" of Rutgers and, therefore, receive federal funds. (*Id.*). None of these assertions are supported by any factual basis or additional details beyond these summary statements. They fall far short of satisfying basic pleading standards to demonstrate that these defendants were either state actors or received federal funds.

Plaintiff's attempt to revive the claims against the private entity defendants that were previously dismissed with prejudice by arguing that they contracted with a public entity, such as Rutgers, is equally unavailing. "[A] private corporation is not a public entity merely because it contracts with a public entity to provide some service." *Matthews*, 613 F. App'x. at 170 (citing *Edison v. Douberly,* 604 F. 3d 1307, 1310 (11th Cir. 2010)); *see also Green v. City of New York,* 465 F.3d 65, 79 (2d Cir. 2006) (holding that a private hospital performing government services by contract is not an "instrumentality" of the government); *Cox v. Jackson,* 579 F.Supp.2d 831, 852 (E.D. Mich. 2008) (holding that a private medical provider with a contract to serve a prison was not a government entity). Accordingly, even if the hospitals or medical entities worked with Rutgers, this alone does not render them state actors. Plaintiff's Title II claims and Rehabilitation Act claims cannot be maintained against any defendant except the three government entities.[5] Similarly, with the exception of Rutgers, State of NJ, NJ Department of Human Services, Barnabas

---

[5] Even though the Title II claims are cognizable against the three government entities, they still fail to survive because they are time-barred, for the reasons explained above.

Medical Center and RWJ, Plaintiff's Rehabilitation Act claims fail because Plaintiff's only proof that the other defendants received federal funding are vague and conclusory statements that have no basis in fact or law. *See Langston v. Milton S. Hershey Med. Ctr.*, No. 15-CV-2027, 2016 WL 1404190, at *11 (M.D. Pa. Apr. 11, 2016) (dismissing a Title II ADA claim against a hospital because the mere receipt of federal Medicaid funds was insufficient to demonstrate that it was an "instrumentality of a State"). Accordingly, the Title II ADA and Rehabilitation Act claims asserted against the vast majority of the defendants in the proposed TAC are futile.

###    3.    There Is No Individual Liability Under Title II of the ADA or The Rehabilitation Act

Plaintiff's claims under Title II of the ADA and Section 504 the Rehabilitation Act also fail to the extent alleged against the individual defendants, because these statutes do not provide for liability against individuals. *See*, *e.g. Matthews*, 613 F. App'x. at 169-70 (dismissing claims against individual defendants under Title II because there the statute does not allow for individual liability); *Rosenberg v. Whitehead*, No. 10-CV-4419 (SDW), 2011 WL 868809, at *6-7 (D.N.J. Mar. 10, 2011) (dismissing Title II and Rehabilitation Act claims against individual defendants for failure to state a claim). Accordingly, these claims are also futile.

###    4.    Certain Of Plaintiff's Claims Fail Because There Is No Private Cause Of Action

Several of Plaintiff's purported claims fail because no private right of act exists. Plaintiff's claim under federal criminal statute 18 U.S.C. § 1035 fails because no private right of action exists. *Watson v. Cmty. Prop. Mgmt.*, No. 19-CV-2918, 2019 WL 3714529, at *3 (E.D. Pa. Aug. 6, 2019) (dismissing a claim brought under § 1035 because it is a criminal statute, thus there is no private right of action). Plaintiff's claim under N.J.S.A. 2C:13-3, a state criminal statute, is futile for the same reason. *Itiowe v. Daniel*, No. 16-CV-7777 (RMB)(KMW), 2017 WL 4179811, at *1 n. 4,

(D.N.J. Sept. 21, 2017) (finding that N.J.S.A. 2C:13-3 is a criminal statute and accordingly plaintiff had no standing to assert a criminal action in a civil matter). Additionally, Plaintiff's claims under N.J.A.C. 8:43G–4.1(a) and N.J.S.A. § 26:2H-12.8(2) do not create a private right of action. *Castro v. NYT Television*, 370 N.J. Super. 282, 294 (N.J. Super. Ct. App. Div. 2004) (holding that the Patient Bill of Rights Act, N.J.S.A. § 26:2H-12.8(2) does not contain a private right of action); *Greenstein v. Sunitha Moonthungal, P.C.*, No. A-1233-11T1, 2013 WL 149658, at *2 (N.J. Super. Ct. App. Div. Jan. 15, 2013) (finding that the remedy for a claim under N.J.A.C. 8:43G–4.1(a) is with the hospital administration, not the courts). Thus, Plaintiff's claims under each of these statutes is futile because he cannot bring private cause of action.

## 5.    Plaintiff Fails To Allege Any Facts To Plausibly Establish Liability By The Individual Defendants

Every claim in the TAC is asserted against multiple defendants, with little to no distinction as to what wrongful conduct was allegedly engaged in by each individual defendant. Plaintiff does not plead any specific facts against any of the individual defendants (except Dr. Levine) other than to sweeping statements the individuals were part of leadership of one of the corporate defendants. The TAC provides only "conclusory allegations against Defendants as a group, failing to allege the personal involvement of any Defendant" which fails to meet the pleading standard of Rule 8. *Galicki* 2015 WL 3970297, at *2. Simply stated, Plaintiff fails to explain what each of the defendants did that was wrong. As such, he fails to meet even the most basic of pleading standards, rendering his claims futile.

## 6.    Plaintiff's Section 1983, 1985 and 1986[6] Claims Fail Because Defendants Were Not Operating Under Color of State Law

---

[6] Although Plaintiff mentions Sections 1985 and 1986 in the preamble section of his proposed TAC, he does not actually mention them in any of his claim sets. (ECF 130-3). Accordingly, Plaintiff does not articulate any viable claim under either of these statutory provisions and the court will not address them further in this section other than to state that they are futile.

Plaintiff alleges that various defendants committed violations under § 1983. Section 1983 "provides private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013). A statutory prerequisite to maintaining an action under § 1983 requires the defendants to have acted "under color of state law" with conduct that "deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). Only state actors can act "under color of law," therefore non-state actors cannot be held liable under § 1983 unless their conduct is "fairly attributable to the state." *Wolf v. Escala*, No. 14-CV-5985, 2015 WL 2403106, at *13 (D.N.J. May 20, 2015) (citation omitted).

Plaintiff makes no allegations in the TAC that would even arguably support a claim that any of the private defendant acted under color of state law. *Ludwig v. Carpenters Health & Welfare Fund of Philadelphia And Vicinity*, 383 F. App'x 224, 226 (3d Cir. 2010) (affirming dismissal of Section 1983 claims against private actors because there were no allegations that their conduct was fairly attributable to the state). Plaintiff's conclusory statements that "all Defendants are either state employees, state entities or licensed by the State and are working under the color of the law in their official capacities and/or authorities" falls far short of demonstrating how each defendant acted under color of state law. (TAC at 34). Indeed, this Court previously dismissed Plaintiff's due process and equal protection claims against private defendants finding "they are not state actors." (ECF No. 34 at 7).

Further, many of Plaintiff's § 1983 claims are improperly based upon alleged violations of state law. (*See e.g.* TAC at 64) (alleging claims "[u]nder 42 U.S.C §1983 regarding N.J.S.A. 2C:13-3"). Section 1983 claims provide "a remedy for violations of federal, not state or local, law." *McMullen v. Maple Shade Twp.*, 643 F.3d 96, 99 (3d Cir. 2011). Thus, to the extent Plaintiff's 1983

claims are based upon violations of state laws, they cannot be maintained. Accordingly, Plaintiff's § 1983 claims are futile against the non-state actors and to the extent they allege violations of state law.

### 7.    **Plaintiff's Claims Against Rutgers Fail**

As the proposed TAC makes clear, the only reason why Rutgers was added was to try to revive Plaintiff's previously dismissed claims. (TAC at 46) (explaining that because Rutgers is a state entity and Rutgers is a "part" of RWJ, the latter "must be subject to Title II of the ADA." Plaintiff's proposed TAC does not reveal any basis for naming Rutgers in this case, other than its unrelated dealings with the private entity defendants. Plaintiff cannot add an entirely new party solely to revive an old claim. Plaintiff does not make any allegations to support a claim against Rutgers beyond alleging some form of a business relationship with either HMH or RWJ. (TAC at 35). Even if such a relationship existed, that is not a basis for naming Rutgers as a defendant, when there is no allegation that Rutgers personally participated in any of the alleged wrongful conduct. Accordingly, Plaintiff's claims against Rutgers are futile.

### **CONCLUSION**

For the foregoing reasons and for good cause shown, Plaintiff's Motion for Leave to File a Third Amended Complaint is **DENIED** without prejudice.

*s/ Stacey D. Adams*
Stacey D. Adams
United States Magistrate Judge